UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Mother J. and Father J., )<br>On behalf of and as next friend of )<br>M.J. ) | Case No. _____ |
| Plaintiff, ) | JURY TRIAL REQUESTED |
| vs. ) | |
| PROSPECT MOUNTAIN JMA )<br>SCHOOL DISTRICT SAU 301, ) | |
| Defendants. ) | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

### I.  INTRODUCTION

1.  This an action brought for violations of the 5th and 14th Amendments to The United States Constitution, negligence, breach of contract, intentional infliction of emotional distress, and liability under 42 U.S.C. §1983 for a school district's failure to investigate, discipline, terminate, or control their employees, who discriminated and retaliated against, bullied, and harassed M.J. and other students for political influence and/or revenge.  It should be well noted that such discrimination and retaliation is often difficult to pinpoint with affirmative acts and such oppression can easily be accomplished and officially sanctioned, especially within the realm of the halls of a small-town high school, by inaction, omission and other purely sensory, yet very real, matters such as tone, inflection, glare and exclusion.

## II.  JURISDICTION AND VENUE

2. The court has jurisdiction under 28 U.S.C. § 1331, supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to the Plaintiff's action occurred in this district, where the Plaintiff resides in this district, and/ or where the Defendants are located in this district.

## III. PARTIES

4. Plaintiffs M.J., along with Mother J. and Father J., reside in the State of New Hampshire, County of Belknap.

5. Defendant Prospect Mountain JMA School District SAU 301 is located at 242 Suncook Valley Road, in the town of Alton, State of New Hampshire and encompasses Prospect Mountain High School ("PMHS") a public high school at the same location.

## IV. FACTUAL ALLEGATIONS

6. Mother J. is a former member of the PMHS School board.

7. Mother J. and Father J. are the parents of Plaintiff M.J.

8. Mother J., due to her activity on the School Board, has been subjected to threats, false police reports, defamation of character, and other troubling behaviors exhibited by School Board members and School employees.

9. During her time on the school board, Mother J. was the target of abuse, and harassment because of her political views.

10. Mother J. and M.J. have experienced bullying, and/ or retaliation, and/ or discriminatory and disturbing behaviors from the PMHS School Board, teachers and staff.

11. Other members of the community have experienced bullying, and/ or retaliation, and/ or discriminatory and disturbing behaviors from the PMHS School Board, teachers and staff.

12. Many of the individuals involved in the past mistreatment of Mother J. still remain in the employ of Defendants.

13. These teachers and staff members have held on to the grudge against this family and targeted the youngest members of that family, including M.J., while they were students of PMHS.

14. These staff members have made tranquility and success in PMHS impossible for the Plaintiff M.J.

15.  Minor Plaintiff, M.J. has experienced bullying, and/ or retaliation, and/ or discriminatory and disturbing behaviors from the PMHS School Board, teachers and staff.

16. Terri Noyes was a member of the school board who was in conflict with Mother J. during the time she served on the school board.

17. During the end of Mother J.'s time on the school board Terri Noyes made comments to her such as "your time will come."

18. Terri Noyes' husband, Coach Gary "Bubba" Noyes, is the baseball coach for PMHS.

19. During Coach Noyes time as coach, M.J. was on the baseball team.

20. Throughout his time on the team, M.J. was subjected to harassing, discriminatory treatment by Coach Noyes. This treatment caused M.J.'s school work to suffer. This treatment cased M.J. emotional distress. This treatment has caused M.J. to become uncomfortable at school which has stunted his academic growth.

21. Coach Noyes discriminated against M.J. and bullied him. This treatment caused M.J.'s school work to suffer. This treatment cased M.J. emotional distress. This treatment has caused M.J. to become uncomfortable at school which has stunted his academic growth.

22. These issues were brought to the attention of the Principal of PMHS, Mr. Fitzpatrick ("Principal").

23. Plaintiffs were told that there was nothing that could be done.

24. The Principal did not report this information to any other source as is required by the school's handbook.

25. No action was taken on these complaints by the school.

26. Plaintiffs met with the principal and administration members on several occasions.

27. The administration repeatedly expressed their fear of Teri Noyes impacting their employment if they were to comply with the handbook and process the complaints as required.

28. The Principal refused to handle these complaints because he feared retaliation by Teri Noyes, and admitted the same to M.J.'s parents during a meeting.

29. Plaintiffs feared continued discrimination and retaliation because of the Principal's unwillingness to properly handle the complaints.

30. Due to the Administration's expressed fear of Teri Noyes, Plaintiffs were justifiably concerned that the Administration would fail to take corrective action against other political allies of Teri Noyes, such as Mr. Limanni, Ms. Kelliher, and Mr. Hikel and Plaintiffs became emotionally distressed by this reality.

31. Coach Noyes intensified his harassment and discrimination against the Plaintiff because he learned about the complaints.

32. Coach Noyes used his position of power to retaliate against the Plaintiff because the Plaintiff had made complaints against him.

33. Coach Noyes intensified his harassment and discrimination against the Plaintiff in retaliation for the complaints made against him.

34. The discrimination and harassment perpetuated by Coach Noyes continued unabated.

35. The Plaintiffs wrote a letter to the Principal explaining the situation to him in writing.

36. The letter informed the Principal that the harassment, retaliation, and discrimination had become so destructive to M.J.'s development that the family was considering changing schools if it was not stopped.

37. No action was taken by the Principal on this written complaint.

38. The Principal did not respond to the Plaintiffs regarding their concerns as he was required to do by the school's written policy.

39. The discrimination and harassment perpetuated by Coach Noyes continued unabated.

40. The acts perpetuated by Coach Noyes and the school board rose to the extreme level that the Plaintiffs were compelled to move M.J. to a different school district.

41. The Plaintiffs though counsel, attempted non-judicial resolution with the school, but no offer was forthcoming.

42. The Plaintiffs alerted the School and the State to the seriousness of the harms and torts brought to bear on M.J. and sought equitable remedies, but the School continued unabated in the steadfast refusal to provide any offer to right the wrongs, apologize for, or even acknowledge their failures, and the State also refused to step in and provide a remedy tacitly sanctioning the wrongful behaviors as described more fully herein.

## COUNT I
### DEFENDANTS DISCRIMINATED AGAINST PLAINTIFF IN VIOLATION OF THE EQUAL PROTECTION, AND DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES' CONSTITUTION

43. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

44. The court has long stressed the import of equal protection when it comes to education: "In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity where the state has undertaken to provide it, is a right which must be made available to all on equal terms." Brown v. Board of Education, 347 U.S. 483, 493 (1954).

45. In violation of the equal protection clause of the Fifth and Fourteenth Amendments to the United States' Constitution Plaintiff was discriminated against by school employees because of his family background, and his parent's political views.

46. Because his parents held political views that differed from those views of the school's staff, Plaintiff was harassed, threatened, and denied access to the basic remedies that should have been available to him.

47. Plaintiff's parents made numerous complaints about the harassment to which their child was subjected.

48. These complaints were blatantly and inexplicably ignored.

49. These complaints were disseminated to school employees who retaliated on the knowledge that complaints had been made.

50. The harassment and discrimination caused the child to move school districts.

51. The court has long recognized that a child has a right to a public education that cannot be denied without due process of law: "The State is constrained to recognize a student's

legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that clause." Goss v. Lopez, 419 US 565, 574 (1975).

52. The child was denied equal access to education in violation of the Equal Protection Clause because of his parent's political beliefs, and their exercise of their first amendment right to free speech.

53. Mother J. as a school board member was outspoken on issues that were unpopular with the school staff.

54. Because of these views Plaintiff was treated differently both in the classroom and in his athletic endeavors.

55. The discrimination Plaintiff endured made school unbearable for him. Plaintiff struggled to keep his focus and grades up.

56. The discrimination made it impossible for Plaintiff to exercise his right to a public education.

57. Through this discriminatory treatment Plaintiff has been denied access to education without being given due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

### COUNT II
### CIVIL LIABILITY UNDER 42 U.S.C. § 1983 FOR VIOLATIONS OF THE FIFTH AND FOURTEENTH AMENDMENT'S TO THE UNITED STATES' CONSTITUTION

58. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

59. Defendants violated the rights guaranteed the Plaintiff by the Fifth and Fourteenth Amendments of the United States' Constitution.

60. Defendants acted under color of law in their discriminatory treatment of the Plaintiff.

61. Defendants are a public high school and public school district agents and employees, their actions in the administration of a school are state actions for the purposes of § 1983.

62. The actions taken by the Defendants should be considered state action as a public policy matter. The Defendants here used the powers granted to them by law in order to suppress the free speech of a public official.  Moreover, in a most shocking and outrageous fashion, used their positions of power and influence over the children to exact political revenge, and political influence, by retaliating against children enrolled in the school.

63. Courts have found that "a municipality can be liable under § 1983… Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." Canton v. Harris, 489 U.S. 378, 389 (1989) *citing*. Pembaur v. Cincinnati, 475 U.S. 469, 483-484 (1986).

64. Here the Defendants as state actors failed to train or supervise their employees in relevant respects and as a result their employees participated in acts which violated the Plaintiff's Constitutional Rights.

65. The Defendants under color of law failed to train their employees in a way that would prevent unconstitutional treatment of their students, in so doing Defendants are liable under 42 U.S.C. § 1983 for the violations of students Constitutional Rights perpetuated by their employees.

66. On numerous occasions employees of the Defendants acted towards students in a manner which violated their Constitutional Rights, and no action was taken against them:

a.  On May 21, 2004 a letter was sent to Mr. Fraser of the school board by Reuben
Wentworth. The letter informed Mr. Fraser of a series of events where an algebra
teacher Mr. Limanni was verbally abusive in his algebra class regarding the
politics of the school board and specifically the political leanings of the Plaintiff's
mother. These events caused C.W., a close relative of the plaintiff, severe
emotional distress. Mr. Limanni was so vocal in class regarding his distaste for
the Plaintiff's mother's politics that C.W. was unable to stay in class, was failing
that class, and suffered emotional distress. No appropriate corrective action was
taken by any school administrator on this complaint.

2.  Principal Gremlitz brought teacher Mr. Limanni in for a meeting
on the issue and at said meeting teacher Mr. Hikel the Union
Representative proceeded to bully CJ by threatening harassment charges.

3.  No disciplinary or corrective action was taken. No apology or
responsibility was undertaken for these inappropriate actions.

4.  Both teachers Hikel and Limanni remain teachers at the school.

5.  Both teachers Hikel and Limanni are in league with Board Member
Noyes.

6.  Both teachers Hikel and Limanni bullied, intimidated, harassed, or
otherwise discriminated against M.J. while he was enrolled in the school.

7.  No disciplinary or corrective action was taken against them.

b.  The children of two former school board members, Keith Couch and Lynda
Goossens were retaliated against on the athletic field because of their parent's

political views. One of the two children had to quit the team because of this

treatment.

    c.   Plaintiff's tech teacher, Brian Hikel was intimidating toward him in class because

        of the Plaintiff's parent's political views. The intimidation forced the Plaintiff to

        transfer out of shop class.

67. The above listed incidents are non-exhaustive and not isolated, and show that the school

    failed to train its agents against violations of the constitutional rights of its students,

    failed to abide by their own contract, and committed torts on the students.

68. The wide spread nature of these violations indicates that the Defendant's failure to train

    its employees in these relevant matters amounts to deliberate indifference.

69. Defendants discriminated against the Plaintiff because of his family background, his

    parent's political views and his parent's exercise of their first amendment right to free

    speech.

70. Many of the facts listed herein, along with additional documentary evidence, was first

    presented to the State Superior Court for equitable intervention, remedy, or school

    sponsored contrition.  The School denied all liability, blocked an investigation, defended

    against the claims staunchly and the court refused to provide any remedy and ordered the

    cause be dismissed on February 4, 2013.

71. In so doing, the court, a state actor, declined to defend the Plaintiff's constitutional rights

    in this matter.

72. In so doing, the School, the SAU, and the municipality, persisted in violating the

    Plaintiff's constitutional rights.

73. The Plaintiff was denied equal access to public education in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States' Constitution because of his parent's political views and exercise of their first amendment right to free speech.

74. The Plaintiff was denied access to public education in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States' Constitution.

75. Plaintiff was damaged by these violations of his constitutional rights.

76. Due to these violations Plaintiff missed numerous educational opportunities and had to incur the expense of changing school districts.

77. Defendants are liable for the damage caused to the Plaintiff by their torts, breaches of contract, and constitutional violations through 42 U.S.C. § 1983.

## COUNT III
## NEGLIGENCE

78. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

79. Plaintiffs assert a claim for negligent hiring, negligent supervision, negligent retention of School District employees, including but not limited to Coach Bubba Noyes, and teachers, Brian Hikel and Tony Limanni. The School district had a duty to supervise, discipline and discharge employees who were not following administrative protocol, not acting in the best interest of the students, and/or retaliating against, discriminating against, or bullying students for political reasons. As described herein, the administration of School District was made aware of such complaints by the Plaintiffs and others and yet breached their duty to supervise, discipline or discharge the offending employees. This breach of duty resulted in emotional and financial damages to the Plaintiffs.

80. New Hampshire schools have a statutory duty to provide a safe secure and peaceful school environment, free of bullying for their pupils. *See* RSA 193-F.

81. Defendants breached that duty with regards to M.J.

82. Defendants breached their duty to the plaintiff through the actions of their agents including but not limited to Coach Noyes, Brian Hikel, and Tony Limanni.

83. The actions of Coach Noyes were directly opposed to the school's duty to look out for the best interests of the students under their care and control.

84. Plaintiff was damaged by this breach.

85. M.J.'s academic performance suffered, he suffered from mental anguish and eventually had to incur the cost of changing M.J.'s school because of those actions.

86. Defendants breached their duty to M.J. by failing to respond to the numerous complaints made by his parents regarding the actions of Coach Noyes.

87. Defendants breached the duties described in the school's hand book by failing to respond to the numerous complaints made by M.J.'s parents.

88. Defendants breached their duty to M.J. by failing to follow the school's rule book for the complaints made against Coach Noyes.

89. As a result of this breach of duty, M.J.'s academic performance suffered, he suffered from mental anguish and had to incur the cost of changing M.J.'s school.

## <u>COUNT IV</u>
## BREACH OF CONTRACT: BULLYING

90. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

91. Page 17 of the 2011- 2012 Prospect Mountain High School Student and Parent Handbook provides the following information regarding bullying;

a. "Bullying is defined as a single significant incident or pattern of incidents involving a written, verbal or electronic communication, or a physical act or gesture, or any combination thereof, directed at another student which;

    1.    Causes emotional distress to pupil;

    2.    Interferes with a pupil's educational opportunities;

    3.    Creates a hostile education environment…"

b. "Bullying will not be tolerated and perpetrators will be subject to appropriate disciplinary action as determined by the administration."

92. Every student was given a copy of this handbook at the start of the school year.

93. The information contained within these statements by the Defendants' creates a contract between the school and its students.

94. A term of that contract is that bullying, in any form, will not be tolerated.

95. Protection from bullying is a serious consideration for any student entering in to an educational endeavor.

96. The Defendants breached this contract when they failed to take action when Coach Noyes took numerous actions against the Plaintiff which constitute bullying under this contract.

97. The Defendant's breach caused damages to the Plaintiff in the form of mental suffering, decline in academic performance and eventually the costs associated with moving school districts.

98. Additionally, the Defendants allowed a child to bully the Plaintiff in breach of their Handbook.

99. Allowing such bullying to take place was in breach of the contract between plaintiff and defendant.

100.      A child was threatening and bullying the Plaintiff with threats of violence and

threats of using a knife to attack the Plaintiff.

101.      These threats occurred for months with no action being taken to prevent it by the

Plaintiff.

102.      According to their Handbook, Defendants had a contractual duty to protect the

Plaintiff from this type of behavior.

103.      The Plaintiff was forced to file a complaint with the Alton Police Department

when the Defendants failed to take action against this student's bullying.

104.      The Defendant's breach caused damages to the Plaintiff in the form of mental

suffering, decline in academic performance and eventually the costs associated with

moving school districts.

## COUNT V
## BREACH OF CONTRACT: HARASSMENT

105.      Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein,

as if fully stated within this count.

106.      Page 40 of the 2011-2012 Prospect Mountain High School Student and Parent

Handbook provides the following information regarding Harassment;

c.   "Prospect Mountain High School believes that students and employees have the

right to be free from illegal discrimination or harassment… All students and

employees should be able to work in an environment free from all forms of

discrimination, intimidation and harassment… All students and employees must

treat each other with courtesy and consideration."

    d.  "It shall be a violation of this policy for any student or employee to harass a student or an employee through conduct or communication of a discriminatory nature as defined by this policy."

    e.  "Prospect Mountain High School will act to investigate all complaints, formal or informal, verbal or written, of unlawfully harassment…"

107.    The handbook goes on to define Unlawful Harassment as follows: "Harassment refers to unreasonable conduct or behavior which is personally offensive or threatening, impairs morale, or interferes with the work of the educational environment."

108.    Through written correspondence, Defendants were informed of the numerous occurrences of harassment perpetuated by Coach Noyes.

109.    On Friday May, 4, 2012 Mother J. and Father J. informed Principal Jay Fitzpatrick of discrimination that was witnessed during a baseball practice on May 3, 2012. During that practice Coach Noyes forced M.J. to catch an inordinate amount of pitches without a break. M.J. was suffered to act as catcher continuously in a non-stop fashion not typical to the sport, until he finally had to stop due to pain. The Plaintiff, a minor child, was singled out for this cruel and abusive treatment as a retaliatory and discriminatory action.

110.    Principal Fitzpatrick was further informed that during the May 3, 2012 practice it was also noticed that some of the players had been allowed to disparage other players on the team. The coach sanctioned this harassment by non-action. The school district, town, and State, sanctioned it by non-action.

111.    Principal Fitzpatrick in his role as principal is required by the student handbook to respond to all complaints.

112.     Principal Fitzpatrick offered no response to this complaint.

113.     On May 22, 2012 Mother J. sent a follow up complaint to Jay Fitzpatrick by email. The email contained the following language: "What has transpired over the course of this baseball season is absolutely unacceptable. Can you both, honestly look us in the eye and tell us that retaliation does not happen and is not an accepted practice at PMHS?" the letter goes on to say:

> "I spent a lot of time on the phone today speaking to various organizations. Discrimination in any form, regardless of whether it is educational or sports related is against the law if a school receives federal funding and the school can be held liable.
>
> Jay, you told me self-esteem falls under safety. Our son's "safety" is our main concern perhaps you are of the mind that because [name redacted] has applied to New Hampton that this too shall pass? Clearly you underestimate how very angry we are…."

114.      Principal Fitzpatrick in his role as principal is required by the student handbook to respond to all complaints.

115.     Principal Fitzpatrick offered no response to this complaint.

116.     By email dated May 22, 2012 Mother J. informed an agent of the Defendants of the following information: "Because of all that has been happening and [name redacted] knowledge (limited, but definitely aware) of how my time on the school board is still a source of contention for some people that interact with him on a daily basis he is feeling *less and less comfortable*." The email goes on to say "As long as he cannot receive a fair, well-rounded education free from discrimination while under the care of anyone

employed at PMHS, we have a very big problem. The downward spiral in grades since

baseball began is not a coincidence. *It is a symptom*."

117.    This email describes a series of events which would fall under the definition of

discrimination and harassment under the contract contained within the parent teacher

handbook.

118.    By taking no action in regards to Coach Noyes for this harassment, the

Defendants are in breach of contact with the Plaintiff.

119.    The Defendant's breach caused damages to the Plaintiff in the form of mental

suffering, decline in academic performance and eventually the costs associated with

changing school districts.

### COUNT VI
### BREACHED OF CONTRACT: RETALIATION/ REPRISAL

120.    Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein,

as if fully stated within this count.

121.    Page 43 of the Prospect Mountain High School Student and Parent Handbook

provides the following information regarding Reprisal, in pertinent part:

122.    "Prospect Mountain High School will discipline any individual who retaliates

against any person who reports alleged unlawful harassment… Retaliation includes, but

is not limited to, any form of intimidation, reprisal or harassment."

123.    Coach Noyes was informed that complaints were made against him.

124.    Coach Noyes discriminated against and retaliated against M.J. after having been

informed of the Plaintiff's compliant and he began to treat M.J. in an even more

discriminatory manner.

125.    M.J. was treated differently at practice and games than other players of like skill.

126.     M.J. was not rostered for the playoffs and was told of this fact immediately after complaints were made against Coach Noyes.

127.     M.J. was the only player on the team not rostered by Coach Noyes to play in the playoffs. Coach Noyes informed other players and their parents that M.J. was specifically not invited to play in the playoffs.

128.     Defendants were informed of this reprisal through their agent Principal Jay Fitzpatrick who received an e-mail from Mother J. on May 22, 2012 summarizing these facts.

129.     Defendants failed to carry out their duty under the contract when they failed to discipline Coach Noyes.

130.     The Defendant's breach caused damages to the Plaintiff in the form of mental suffering, decline in academic performance and eventually the costs associated with changing school districts.

131.     As described herein, Coach Noyes was not simply training the plaintiff in an NHIAA compliant manner, but rather specifically singling him out for retaliatory and discriminatory treatment that went above and beyond the usual coach/player dynamic and was for the purpose of exacting a political point, at the behest of Terri Noyes, or otherwise in a retaliatory manner for properly filed complaints.

## COUNT VII
## DEFENDANTS ARE LIABLE UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR FOR THE NEGLIGENCE OF THEIR AGENT COACH NOYES

132.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

133.    As part of his employment Coach Noyes has a duty to decide who plays baseball in a manner that is not discriminatory as is laid out in the NHIAA handbook.

134.    Coach Noyes breached that duty with regards to the Plaintiff.

135.    Coach Noyes' breach damaged the Plaintiff in mental suffering, decline in academic performance, and eventually the costs associated with moving school districts.

136.    Defendants are liable for Coach Noyes negligence under the doctrine of Respondeat Superior.

137.    "Under respondeat superior, 'an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope or his or her employment when his or her tortious act injured the plaintiff.'" Porter v. City of Manchester, 151 N.H. 30, 39-40 (2004) citing Pierson v. Hubbard, 147 N.H. 760, 766 (2002).

138.    Here Coach Noyes' negligence occurred in the scope of his employment for the Defendants as the school's baseball coach, and injured Plaintiff.

139.    As described herein, Coach Noyes was not simply training the plaintiff in an NHIAA compliant manner, but rather specifically singling him out for retaliatory and discriminatory treatment that went above and beyond the usual coach/player dynamic and was for the purpose of exacting a political point, at the behest of Terri Noyes, or otherwise in a retaliatory manner for properly filed complaints.

## COUNT VIII
## NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL

140.    Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

141.    Coach Noyes used his role as an authority figure to actively and continuously inflict emotional distress upon the Plaintiff.

142.    The harassment and discrimination executed by Coach Noyes were beyond all bounds of decency in society because of his authoritative role over the Plaintiff, the powerlessness of the Plaintiff, and the age difference between the parties.

143.    This distress affected the Plaintiff's school work and finally made being at school unbearable for him.

144.    The distress inflicted by Coach Noyes has caused Plaintiff life long and irreparable harm for mental anguish.

145.    The harassment and discrimination occurred during Coach Noyes' employment by the Defendants, and the Defendants failed to investigate accusations when presented with them.

146.     "Under respondeat superior, 'an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope or his or her employment when his or her tortious act injured the plaintiff.'" Porter v. City of Manchester, 151 N.H. 30, 39-40 (2004) *citing*. Pierson v. Hubbard, 147 N.H. 760, 766 (2002).

147.    Here Coach Noyes' commission of the intentional tort, intentional infliction of emotional distress occurred in the scope of his employment for the Defendants as the school's baseball coach, and injured Plaintiff.

148.    As described herein, Coach Noyes was not simply training the plaintiff in an NHIAA compliant manner, but rather specifically singling him out for retaliatory and discriminatory treatment that went above and beyond the usual coach/player dynamic and

was for the purpose of exacting a political point, at the behest of Terri Noyes, or

otherwise in a retaliatory manner for properly filed complaints.

149.    Defendants are vicariously liable for the torts committed by Coach Noyes under

the doctrine of respondeat superior.

WHEREFORE, Plaintiff prays for the following relief:

      a.  Damages under 42 U.S.C. 1983 or other rule or statute;

      b.  Attorney's fees allowed for under 42 U.S.C. § 1988 or other rule, statute, or

        contract;

      c.  Compensatory damages, including, general and special damages to be determined

        by the finder of fact;

      d.  Exemplary and punitive damages;

      e.  Pre- and Post-judgment interest;

      f.  Declaratory Judgment and Relief;

      g.  All other compensatory, equitable, declaratory, legal or injunctive relief as this

        Court deems just.

**JURY TRIAL REQUESTED**

April 30, 2013                                 Respectfully submitted,
                                          PLAINTIFFS
                                          By Their Attorneys

                                        /s/John F. Skinner, III
                                        Atty. John F. Skinner, III
                                        Skinner Rivard Law Offices
                                        530 Chestnut Street, 3rd Floor
                                        Manchester, NH 03101
                                        Tel: (603) 622-8100
                                        Fax: (888) 912-1497
                                        AttorneySkinner@gmail.com
                                        NHBN:19886