UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Cydney Johnson & Dan Johnson ) | |
| On behalf of and as next friend of ) | |
| M.J. ) | |
| ) | |
| Plaintiff, ) | JURY TRIAL REQUESTED |
| ) | |
| vs. ) | |
| ) | |
| PROSPECT MOUNTAIN JMA ) | |
| SCHOOL DISTRICT SAU 301, ) | Civil Action: 1:13-CV-207-LM |
| ) | |
| PRIMEX3 ) | |
| ) | |
| J. FITZPATRICK ) | |
| Individually and as Principal of ) | |
| Prospect Mountain High School ) | |
| Defendants. ) | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### *I. INTRODUCTION*

1. This an action brought for violations of the 5th and 14th Amendments to The United States Constitution, negligence, breach of contract, intentional infliction of emotional distress, and liability under 42 U.S.C. §1983 for a school district's failure to investigate, discipline, terminate, or control their employees, who discriminated and retaliated against, bullied, and harassed M.J. and other students for political influence and/or revenge. It should be well noted that such discrimination and retaliation is often difficult to pinpoint with affirmative acts and such oppression can easily be accomplished and officially sanctioned, especially within the realm of the halls of a small-town high school, by inaction, omission and other purely sensory, yet very real, matters such as tone,

inflection, glare and exclusion.

2. "The doctrine of nonresistance against arbitrary power, and oppression, is absurd, slavish, and destructive of the good and happiness of mankind." NH Constitution, Bill of Rights, Art. 10.  This Complaint seeks to resist the wielding of arbitrary power and oppression apparent within Prospect Mountain JMA School District SAU 301.

## II.  JURISDICTION AND VENUE

3. The court has jurisdiction under 28 U.S.C. § 1331, supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to the Plaintiff's action occurred in this district, where the Plaintiff resides in this district, and/ or where the Defendants are located in this district.

## III. PARTIES

5. Plaintiff M.J., along with Cydney Johnson ("Mrs. Johnson") and Dan Johnson ("Mr. Johnson"), reside in the State of New Hampshire, County of Belknap.

6. Defendant Prospect Mountain JMA School District SAU 301 is located at 242 Suncook Valley Road, in the town of Alton, State of New Hampshire and encompasses Prospect Mountain High School ("PMHS") a public high school at the same location.

7. Defendant Primex3 is the legal trade name of New Hampshire Public Risk Management Exchange, a public entity risk pool established under RSA 5-B.

8. Primex3 has a principal place of business at Bow Brook Place, 46 Donovan Street, Concord, NH 03301.

9. Defendant J. Fitzpatrick is the current principal of Prospect Mountain High School in Prospect Mountain JMA School District SAU 301 where plaintiff M.J. attended.

## IV. FACTUAL ALLEGATIONS

10. Mrs. Johnson is a former member of the PMHS School board.

11. Mrs. Johnson and Mr. Johnson are the parents of Plaintiff M.J.

12. Mrs. Johnson, due to her activity on the School Board, has been subjected to threats, false police reports, defamation of character, and other troubling behaviors exhibited by School Board members and School employees.

13. During her time on the school board, Mrs. Johnson was the target of abuse, and harassment because of her political views.

14. Mrs. Johnson and M.J. have experienced bullying, and/ or retaliation, and/ or discriminatory and disturbing behaviors from the PMHS School Board, teachers and staff. To clarify the use of these terms, whenever used thought this Complaint, the words should be understood to have these meanings and indicate such actions.

    a. Under the PMHS handbook, "Bullying is defined as a single significant incident or pattern of incidents involving a written, verbal or electronic communication, or a physical act or gesture, or any combination thereof, directed at another student which;

        1.    Causes emotional distress to pupil;

        2.    Interferes with a pupil's educational opportunities;

        3.    Creates a hostile education environment…"

    b. "Retaliation includes, but is not limited to, any form of intimidation, reprisal or harassment."

    c. The handbook goes on to define Unlawful Harassment as follows: "Harassment refers to unreasonable conduct or behavior which is personally offensive or

threatening, impairs morale, or interferes with the work of the educational environment."

15. As described and detailed more fully herein, and as will be shown in this case, M.J. and Mrs. Johnson suffered bullying, retaliation, and harassment, as defined herein.

16. The Defendant school district, through its agents, used the powers granted to them by law in order to suppress the free speech of a past public official, Mrs. Johnson by denying due process and equal protection to plaintiff M.J. Moreover, in a most shocking and outrageous fashion, Defendant school district, and it's agents, used their positions of power and influence over the children to exact political revenge, and political influence, by retaliating, bullying, and harassing children enrolled in the school.

    a. To wit- Teacher Tony Limani engaged Mrs. Johnson's niece in a letter writing campaign against her aunt...in an ALGEBRA class.  Teacher Limani used his bully pulpit in the classroom to assail Mrs. Johnson  These actions amount to intimidation, harassment, and reprisal as defined in the handbook and herein. Teacher Limani continues to teach at the defendant school district.

    b. To wit- Coach "Bubba" Noyes bullied and retaliated against M.J. by actions including but not limited to:

        1. Subjecting M.J. to dangerous physical rigors not visited upon other teammates;

        2. Throwing a scorebook at M.J.;

        3. Restricting access to playing and practice time in a manner not so restricted to other teammates;

        4. Verbally abusing M.J.;

    5. Enforcing and/or attempting to enforce NHIAA rules against M.J. not enforced with other teammates;

    6. Applying, misapplying or attempting to apply NHIAA rules to hinder M.J.;

c. To wit- Teacher and Union Rep. Brian Hikel retaliated, bullied, harassed and discriminated against Mother, J., Mr. Johnson and M.J. by actions including but not limited to:

    1. Disciplining M.J. for routine activity such as "high-fiving" for which other students were not disciplined.

    2. Declining to speak anymore than a minimum with Mrs. Johnson and Mr. Johnson at parent teacher night by being terse and rude;

    3. Making rude or disrespectful comments to M.J., and Mrs. Johnson and Mr. Johnson

d. To Wit- Principal J. Fitzpatrick denied M.J. equal protection and due process of law by actions including but not limited to:

    1. Failing to document complaints of staff misconduct, discrimination, bullying, and retaliation;

    2. Failing to investigate complaints of staff misconduct, discrimination, bullying, and retaliation;

    3. Failing to take corrective actions with staff who discriminated bullied or retaliated against students;

    4. Failing to properly train staff and to train them to leave their political views out of their educational efforts;

5.    Failing to properly supervise staff and to ensure that after several complaints, they were leaving their political views out of their educational efforts;

17. Other members of the community have experienced bullying, and/ or retaliation, and/ or discriminatory and disturbing behaviors from the PMHS School Board, teachers and staff.

18. Many of the individuals involved in the past mistreatment of Mrs. Johnson, such as those affiliated with the Union and school board member Teri Noyes, still remain in the employ of defendant school district.

19. These teachers and staff members have held on to the grudge against this family and targeted the youngest members of that family, including M.J., while they were students of PMHS.

20. These staff members have made tranquility and success in PMHS impossible for the Plaintiff M.J.

21.  Minor Plaintiff, M.J. has experienced bullying, and/ or retaliation, and/ or discriminatory and disturbing behaviors, as defined and explained more fully herein, from defendant school district agents: teacher Brian Hikel, Coach "Bubba" Noyes.

22. After the prior principal refused to take action to protect Mrs. Johnson's niece from the political haranguing and emotional abuse of Teacher Limani as described herein; and defendant principal J. Fitzpatrick also refused to process complaints, supervise, discipline or take corrective action; representatives Mrs. Johnson and Mr. Johnson concluded that M.J. would be at risk of further bullying, retaliation, or discriminatory and disturbing behaviors by others in league with Teri Noyes such as: teachers Brian Hikel, Tony

Limani, Kim Kelliher, and Bubba Noyes.

23. Terri Noyes was a member of the school board who was in conflict with Mrs. Johnson during the time she served on the school board.

24. During the end of Mrs. Johnson's time on the school board Terri Noyes made comments to her such as "your time will come." Mrs. Johnson identified this as bullying, harassment, and promised retaliation, as defined in the handbook, which would eventually be, and was, directed at plaintiff M.J.

25. Terri Noyes' husband, Coach Gary "Bubba" Noyes, is the baseball coach for PMHS.

26. During Coach Noyes time as coach, M.J. was on the baseball team.

27. Throughout his time on the team, as described more fully herein, and as shall be proven in this case, M.J. was subjected to bullying, harassing, discriminatory, retaliatory treatment, fitting such definitions of the PMHS handbook, by Coach Noyes. This treatment caused M.J.'s school work to suffer. This treatment caused M.J. emotional distress. This treatment has caused M.J. to become uncomfortable at school which has stunted his academic growth.

28. These issues affecting plaintiff M.J. were brought to the attention of the Principal of PMHS, Mr. J. Fitzpatrick.

29. Prior issues affecting the family of plaintiff M.J., and tending to support the allegations of this Complaint, were brought to the attention of the prior principal, Richard Gremlitz.

30. The defendant school district systematically and continually failed to take corrective actions over a period of many years and instead succumbed to the intimidation of Terri Noyes, her agents, and cohorts, in failing to properly process complaints against her husband Coach "Bubba" Noyes, and other teachers in Ms. Noyes' gang, including Union

representatives, and Brian Hikel, Tony Limani and Kim Kelliher.

31. Plaintiff's representative, Mrs. Johnson and Mr. Johnson were told by the defendant
    school district's representatives, including Principal Fitzpatrick, that there was nothing
    that could be done.

32. The Principal did not report this information to any other source as is required by the
    school's handbook.

33. No action was taken on these complaints by the school.

34. Plaintiff's representatives Mrs. Johnson and Mr. Johnson met with the principal and
    administration members to address these concerns and lodge complaints on several
    occasions beginning in September 2010 and through June of 2012.

35. The administration repeatedly expressed their fear of Teri Noyes impacting their
    employment if they were to comply with the handbook and process the complaints as
    required.

36. The defendant school district refused to handle these complaints because Principal J.
    Fitzpatrick feared retaliation by Teri Noyes, and admitted the same to M.J.'s parents
    during a meeting on or about April 17, 2012.

37. Both the minor plaintiff M.J. and his representatives Mrs. Johnson and Mr. Johnson,
    feared continued discrimination and retaliation because of the defendant school district's
    Principal's unwillingness to properly handle the complaints.

38. Due to the defendant school district administration's expressed fear of Teri Noyes,
    Plaintiff's representatives Mrs. Johnson and Mr. Johnson were justifiably concerned that
    the Administration would fail to take corrective action against other political allies of
    Teri Noyes, such as Bubba Noyes, Mr. Limanni, Ms. Kelliher, and Mr. Hikel.  Plaintiff

M.J. and plaintiff's representatives Mrs. Johnson and Mr. Johnson became emotionally distressed by this reality.

39. Coach Noyes learned of the complaints through unofficial channels.

40. Coach Noyes intensified his harassment, bullying, retaliation and discrimination, as defined and explicated herein, against the Plaintiff M.J., because he learned about the complaints.

41. Coach Noyes used his position of power to retaliate against the Plaintiff M.J. because M.J., and/or his representatives, had lodged or attempted to lodge complaints against him with the defendant school district's administration.

42. Coach Noyes intensified his harassment, bullying, retaliation and discrimination, as defined and explicated herein, against the Plaintiff M.J. in retaliation for the complaints made against him.

43. The harassment, bullying, retaliation or discrimination, as defined and explicated herein, perpetuated by Coach Noyes continued during the 2011-2012 year unabated.

44. The Plaintiff's representatives Mrs. Johnson and Mr. Johnson met in person with the defendant Principal J. Fitzpatrick explaining the situation to him on or about April 14, 2012.

45. The meeting informed the defendant school district, and J. Fitzpatrick, that the harassment, retaliation, and discrimination had become so destructive to M.J.'s development that the family was considering changing schools if it was not stopped, or addressed in accordance with the written policies and procedures of the defendant school district and applicable State and Federal law.

46. No action was taken by the J. Fitzpatrick or the defendant school district on this written

complaint.

47. Neither J. Fitzpatrick, nor the defendant School district responded to the Plaintiff M.J. or his representatives Mrs. Johnson and Mr. Johnson regarding their concerns as they were required to do by the school's written policy.

48. The harassment, bullying, retaliation or discrimination, as defined and explicated herein, perpetuated by Coach Noyes, continued unabated.

49. The acts perpetuated by Coach Noyes and the school board rose to the extreme level that the Plaintiff M.J. and his representatives Mrs. Johnson and Mr. Johnson were compelled to move M.J. to a different school district.

50. The Plaintiff M.J. and his representatives Mrs. Johnson and Mr. Johnson, through counsel, attempted non-judicial resolution with the school, but no offer was forthcoming.

51. The Plaintiff M.J. and his representatives Mrs. Johnson and Mr. Johnson, alerted the School and the State to the seriousness of the harms and torts brought to bear on M.J. and sought equitable remedies, but the defendant school district and the defendant Primex3 continued unabated in the steadfast refusal to provide any investigation, or offer to right the wrongs, apologize for, or even acknowledge their failures, and the State also refused to step in and provide a remedy tacitly sanctioning the wrongful behaviors as described more fully herein.

### COUNT I
### DEFENDANT SCHOOL DISTRICT AND J. FITZPATRICK DISCRIMINATED AGAINST PLAINTIFF M.J. IN VIOLATION OF THE <u>EQUAL PROTECTION</u> CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES' CONSTITUTION

52. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

53. The court has long stressed the import of equal protection when it comes to education:

"In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity where the state has undertaken to provide it, is a right which must be made available to all on equal terms." Brown v. Board of Education, 347 U.S. 483, 493 (1954).

54. In violation of the equal protection clause of the Fourteenth Amendment to the United States' Constitution, Plaintiff M.J. was discriminated against by school employees because of his family background, and his parent's political views.

55. Because his parents held political views that differed from those views of the school's staff, Plaintiff M.J. endured harassment, bullying, retaliation and discrimination, as defined and explicated herein, and ultimately denied access to the basic protections and remedies that should have been available to him.

56. Mrs. Johnson as a school board member was outspoken on issues that were unpopular with the school staff. Because of these views Plaintiff M.J. was treated differently both in the classroom and in his scholastic and athletic endeavors.

57. The discrimination Plaintiff M.J. endured made school unbearable. Plaintiff M.J. struggled to keep his focus and grades up.

58. Thus, the harassment, bullying, retaliation and discrimination, as defined and explicated herein, made it impossible for Plaintiff M.J. to exercise his right to a public education.

59. The defendant school district and J. Fitzpatrick denied M.J. equal protection by failing to enforce the terms of their student handbook, and apply the rules and protocols required of them for the protection of M.J. in a uniform and equal manner.

60. The plaintiff M.J. was therefore denied equal protection under the law where the defendant school district did not follow their policies and apply the law equally on behalf

of the plaintiff M.J.

61. The plaintiff M.J. was denied equal access to education in violation of the Equal

    Protection Clause because of his parent's political beliefs, and their exercise of their first

    amendment right to free speech.

62. The plaintiff M.J. was therefore denied equal access to education afforded under the laws

    of this State. Thus, the plaintiff M.J. suffered a denial of equal protection at the hands of

    the defendant school district.

63. Plaintiff M.J. suffered damages of a denial of his Constitutional rights, and M.J. and his

    representatives Mrs. Johnson and Mr. Johnson also suffered resulting damages in

    ongoing legal fees, costs, and expenses; delay, loss of opportunity, lost interest, and

    prolonged emotional distress, mental pain suffering and anguish.

## COUNT II
### DEFENDANT SCHOOL DISTRICT AND J. FITZPATRICK DISCRIMINATED AGAINST PLAINTIFF M.J. IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES' CONSTITUTION

64. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if

    fully stated within this count.

65. The court has long recognized that a child has a right to a public education that cannot be

    denied without due process of law: "The State is constrained to recognize a student's

    legitimate entitlement to a public education as a property interest which is protected by

    the Due Process Clause and which may not be taken away for misconduct without

    adherence to the minimum procedures required by that clause." Goss v. Lopez, 419 US

    565, 574 (1975).

66. Plaintiff M.J.'s parents, Mrs. Johnson and Mr. Johnson made several complaints about the

mistreatment to which their child was subjected.

67. These complaints were ignored by the defendant school district without due process.

68. These complaints were blatantly ignored by J. Fitzpatrick due to fear of the School Board harassment, bullying, and retaliation led by member Terri Noyes.

69. Without due process, these complaints were disseminated to school employees who retaliated on the knowledge that complaints had been made.

70. Through this discriminatory treatment, and as a result of the defendant school districts lack of due process, Plaintiff M.J. has been denied access to education and educational opportunities at the school in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

71. Plaintiff M.J. suffered damages of denial of his Constitutional rights, and M.J. and his representatives Mrs. Johnson and Mr. Johnson also suffered resulting damages in ongoing legal fees, costs, and expenses; delay, loss of opportunity, lost interest, and prolonged emotional distress, mental pain suffering and anguish.

<u>**COUNT III**</u>
**DEFENDANT SCHOOL DISTRICT AND J. FITZPATRICK SHARE CIVIL LIABILITY UNDER 42 U.S.C. § 1983 FOR VIOLATIONS OF THE FIFTH AND FOURTEENTH AMENDMENT'S TO THE UNITED STATES' CONSTITUTION**

72. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

73. Defendant school district, through its agents, violated the rights guaranteed the plaintiff M.J. by the Fifth and Fourteenth Amendments of the United States' Constitution.

74. Defendant school district, through its agents, acted under color of law in their discriminatory treatment of the plaintiff M.J.

75. The Defendant here is a public school district comprised of a public high school, agents

and employees. Their actions in the administration of the public school are state actions for the purposes of § 1983.

76. The actions taken by the Defendant school district, through its agents, should be considered state action as a public policy matter.

77. Courts have found that "a municipality can be liable under § 1983... Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." <u>Canton v. Harris</u>, 489 U.S. 378, 389 (1989) *citing*. <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 483-484 (1986).

78. Here the defendant school district, its employees, and principal J. Fitzpatrick, as state actors, failed to train or supervise their employees in relevant respects and as a result their employees participated in acts which resulted in the defendant school district violating plaintiff M.J.'s Constitutional Rights to equal protection, due process, and access to an offered public education.

79. The defendant school district, its employees, and principal J. Fitzpatrick, under color of law, failed to train their employees in a way that would prevent unconstitutional treatment of their students, in so doing said defendants are liable under 42 U.S.C. § 1983 for the violations of students' Constitutional Rights perpetuated by their employees.

80. On numerous occasions defendant school district, its employees, and principal J. Fitzpatrick acted towards students in a manner which violated their Constitutional Rights, and no action was taken against them:

    a.  On May 21, 2004 a letter was sent to Mr. Fraser of the school board by Reuben Wentworth. The letter informed Mr. Fraser of a series of events where an algebra teacher Mr. Limanni was verbally abusive in his algebra class regarding the

politics of the school board and specifically the political leanings of the Mrs.
Johnson These events caused a student, and at that time minor, C.W., a close
relative of the plaintiff M.J., severe emotional distress. Mr. Limanni was so vocal
in class regarding his distaste for Mrs. Johnson's politics that student C.W. was
unable to stay in class, was failing that class, and suffered emotional distress. No
appropriate corrective action was taken by any school administrator on this
complaint.

1.      Principal Gremlitz brought teacher Mr. Limanni in for a meeting
on the issue and at said meeting teacher Mr. Hikel the Union
Representative proceeded to bully by threatening harassment charges.

2.      No disciplinary or corrective action was taken. No apology or
responsibility was undertaken for these inappropriate actions.

3.      Both teachers Hikel and Limanni remain teachers at the school.

4.      Both teachers Hikel and Limanni are in league with Board Member
Noyes.

5.      Both teachers Hikel and Limanni, as defined and explicated herein,
bullied, intimidated, harassed, retaliated or otherwise discriminated against
M.J., while he was enrolled in the school.

6.      No disciplinary or corrective action was taken against them.

b.  The children of two former school board members, Keith Couch and Lynda
Goossens were bullied, harassed, discriminated, or retaliated against on the
athletic field because of their parent's political views. One of the two children had
to quit the team because of this treatment.

    c.  Plaintiff M.J.'s tech. teacher, Brian Hikel, because of Mrs. Johnson's political views, was intimidating towards M.J. in the school and during student orientation. The intimidation forced the plaintiff M.J. to transfer out of shop class, thereby denying him due process and equal protection under the law.

81. The above listed incidents are non-exhaustive and not isolated, and show that the defendant school district school failed to train its agents, including but not limited to principal J. Fitzpatrick, Coach Bubba Noyes, Tony Limani, Brian Hikel, against violations of the constitutional rights of its students, failed to abide by their own contracts, and committed torts on the students as described and explicated herein.

82. The defendant school district has ignored or not properly addressed or handled several complaints against staff members.

83. The wide spread nature of these violations indicates that the defendant school district's failure to train its employees in these relevant matters amounts to deliberate indifference.

84. Defendant school district, through its agents, discriminated against the plaintiff M.J. because of his family background, his parent's political views and his parent's exercise of their first amendment right to free speech.

85. Many of the facts listed herein, along with additional documentary evidence, was first presented to the State Superior Court for equitable intervention, remedy, or school sponsored contrition.  The School denied all liability, blocked an investigation, defended against the claims staunchly and the court refused to provide any remedy and ordered the cause be dismissed on February 4, 2013.

86. In so doing, the court, a state actor, declined to defend plaintiff M.J.'s constitutional rights in this matter.

87. In so doing, the defendant School district, J. Fitzpatrick, the SAU, and the municipality, persisted in violating plaintiff M.J.'s constitutional rights.

88. The plaintiff M.J. was thus denied equal access to public education in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States' Constitution because of his parent's political views and exercise of their first amendment right to free speech.

89. Plaintiff M.J. was thus denied access to public education in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States' Constitution.

90. Plaintiff M.J. was damaged by these violations of his constitutional rights.

91. Due to these violations plaintiff M.J. missed numerous educational opportunities and had to incur the expense of changing school districts.

92. Due to these violations, plaintiff M.J. suffered damages in ongoing legal fees, costs, and expenses; delay, loss of opportunity, lost interest, and prolonged emotional distress, mental pain suffering and anguish

93. Defendant school district is liable for the damage caused to plaintiff M.J. by its torts, breaches of contract, and constitutional violations through 42 U.S.C. § 1983.

## COUNT IV
## NEGLIGENCE OF DEFENDANT SCHOOL DISTRICT AND J. FITZPATRICK GENERALLY

94. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

95. New Hampshire schools have a statutory duty to provide a safe secure and peaceful school environment, free of bullying for their pupils. *See* RSA 193-F.

96. Defendant school district and J. Fitzpatrick undertook a duty of care with regard to the

plaintiff M.J.

97. Defendant school district and J. Fitzpatrick breached their duty of care with regards to

plaintiff M.J.

98. Defendant school district and J. Fitzpatrick breached their duty to the plaintiff M.J.

through the actions of their agents including but not limited to Coach Noyes, Brian Hikel,

and Tony Limanni.

99. The actions of Coach Noyes were directly opposed to the school's duty to look out for the

best interests of the students under their care and control.

100.     Plaintiff M.J. was damaged by this breach.

101.      M.J.'s academic performance suffered, he suffered from mental anguish and

eventually had to incur the cost of changing schools because of those actions.

102.     Defendant school district and J. Fitzpatrick breached its duty to M.J. by failing to

respond to the numerous complaints made by his parents regarding the actions of Coach

Noyes.

103.     Defendant school district and J. Fitzpatrick breached its duty to M.J. by failing to

respond to the numerous complaints made by other members of the public, regarding the

actions of Coach Noyes.

104.     Defendant school district and J. Fitzpatrick breached its duty to M.J. by failing to

respond to the numerous complaints made by his parents regarding the actions of Coach

Noyes.

105.      Defendant school district and J. Fitzpatrick breached the duties understood and

described in the school's hand book by failing to respond to the numerous complaints

made by M.J.'s parents.

106.     Defendant school district and J. Fitzpatrick breached their duty to M.J. by failing to follow the school's hand book for the complaints made against its agents and employees including Coach Noyes.

107.     Defendant school district and J. Fitzpatrick breached their duty to M.J. by failing to follow the school's hand book for the complaints made against student bullies such as the student with the knife.

108.     As a result of this breach of duty, plaintiff M.J. endured mental pain suffering, and anguish; decline in academic performance; the costs associated with moving school districts; damages in ongoing legal fees, costs, and expenses; delay, loss of opportunity, lost interest, and resulting possible decline in lifetime earning capacity and opportunity due to the disruption in his High School career.

## <u>COUNT V</u>
## NEGLIGENCE OF DEFENDANT SCHOOL DISTRICT AND J. FITZPATRICK HIRING, TRAINING AND SUPERVISION

109.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

110.     New Hampshire schools have a statutory duty to provide a safe secure and peaceful school environment, free of bullying for their pupils. *See* RSA 193-F.

111.     Defendant school district and J. Fitzpatrick undertook a duty of care with regard to the plaintiff M.J.

112.     Defendant school district and J. Fitzpatrick breached their duty of care with regards to plaintiff M.J.

**School Agent/Employee Bubba Noyes:**

113.     Despite being informed of the dangers of and complaints about coach "Bubba"

Noyes, the defendant district continued to renew his contract essentially hiring him again and again.

114.     Despite being informed of the dangers of and complaints about coach "Bubba" Noyes, Defendant school district and J. Fitzpatrick failed to train, or re-train, their employee.

115.     Despite being informed of the dangers of and complaints about coach "Bubba" Noyes, the Defendant school district and J. Fitzpatrick failed to supervise their employee.

**School Agents/Employees Tony Limani and Brian Hikel**

116.     Defendant school district and J. Fitzpatrick was aware of Tony Limanni's ill-advised and hateful rant against Mrs. Johnson in the algebra class of a relative of plaintiff M.J. and Mrs. Johnson as described and referenced herein.

117.     Defendant school district was aware of, and J. Fitzpatrick was made aware of, Brian Hikel's inappropriate, attacking, and combative response threatening harassment charges by the Union when there was a legitimate attempt to redress and correct the situation described and referenced herein.

118.     Despite being informed of the dangers of and complaints about Tony Limani and Brian Hikel, Defendant school district and J. Fitzpatrick failed to train, or re-train, their employees.

119.     Despite being informed of the dangers of and complaints about Tony Limani and Brian Hikel, Defendant school district and J. Fitzpatrick failed to supervise their employees.

120.     Plaintiff M.J. assert a claim for negligent hiring, supervision, and retention of School District employees, including but not limited to Coach Bubba Noyes, and

teachers, Brian Hikel and Tony Limanni.

121.      New Hampshire Courts recognize a cause of action for negligent hiring or

retention. Marquay v. Eno, 139 NH 708, 718-719 (1995) *Citing* Cutter v. Town of

Farmington, 126 NH 836, 840-841 (1985) (including negligent supervision).

122.      Defendant school district and J. Fitzpatrick had a duty to supervise, discipline and

discharge employees who were not following administrative protocol, not acting in the

best interest of the students, and/or, as described more fully herein and in the PMHS

handbook, retaliating against, discriminating against, bullying, or harassing students for

political reasons.

123.      As described herein, J. Fitzpatrick the administration of School District was made

aware of such complaints by the Mrs. Johnson Mr. Johnson and others and yet breached

their duty to train, supervise, discipline or discharge the offending employees.

124.      As a result of this breach of duty, plaintiff M.J. endured mental pain suffering,

and anguish; decline in academic performance; the costs associated with moving school

districts; damages in ongoing legal fees, costs, and expenses; delay, loss of opportunity,

lost interest, and resulting possible decline in lifetime earning capacity and opportunity

due to the disruption in his High School career.

## COUNT VI
## NEGLIGENCE OF DEFENDANT SCHOOL DISTRICT
## RETENTION

125.      Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein,

as if fully stated within this count.

126.      As outlined herein, Defendant school district had a duty of care to plaintiff M.J.

127.      Defendant school district breached their duty of care with regards to plaintiff M.J.

when, after receiving complaints about Coach "Bubba" Noyes, they retained him as a

staff member.

128.    Defendant school district breached their duty of care with regards to plaintiff M.J.

when, after being informed that principal J. Fitzpatrick had not properly processed

complaints about Coach Noyes or other school bullies, they retained him as principal.

129.    Such retention left student and plaintiff M.J. at continued risk of harm

130.    Defendant school district was put on notice of J. Fitzpatrick's failings through

complaints by the plaintiff M.J.'s representatives directly to the Superintendant of schools

during the 2011-2012 school year.

131.    Defendant school district was put on notice to the harm caused by Coach "Bubba"

Noyes:

    a.  The minutes of school board meeting on June 22, 1992 contained a record of Mr.

        Loring Carr which included the following complaints. [Exhibit A, pages 7-8].

        1.    Rules being broken by the baseball Coach [Bubba Noyes];

        2.    Failure to abide by the philosophy and objectives of developing

          positive attitude, self-image and good sportsmanship;

        3.    Players being needlessly or wrongly excluded from play;

        4.    Possible scholastic detriment resulting from said broken rules;

        5.    Knowingly violating the rules to the detriment of students.

    b.  Opinion Editorial dated August 04, 1993 by Mr. Franz Nicolay containing a

        public record of serious concern with Coach Bubba Noyes, including:

        1.    An "archaic philosophy of coaching youth baseball";

        2.    A "callous disregard" for certain players;

3.      A resulting "intense feeling of frustration, anger, and yes, the very real discrimination and betrayal..."

4.      And, "insensitivity to basic human respect by two coaches with a misguided mission based on short term self-gratification."

c.  On several occasions Mrs. Johnson and Mr. Johnson lodged complaints with defendant school district and principal J. Fitzpatrick.

d.  In April, May, and June, there were emails, phone calls, and in-person meetings with the defendant school district and its agents to try and address these issues and have them properly investigated and handled.

e.  Upon information and belief other parents and students in addition to the plaintiff and representatives, have lodged, or attempted to lodge complaints in the years from 1992 through the present, regarding Bubba Noyes.

132.    Despite being informed time and again of the detriment defendant school district's employee coach Bubba Noyes was causing the children, defendant school district retained the coach.

133.    Such retention of these agents was in breach of their duty to the students.

134.    Such retention of these agents caused harm to the students including plaintiff M.J.

135.    As a result of this breach of duty, plaintiff M.J. endured mental pain suffering, and anguish; decline in academic performance; the costs associated with moving school districts; damages in ongoing legal fees, costs, and expenses; delay, loss of opportunity, lost interest, and resulting possible decline in lifetime earning capacity and opportunity due to the disruption in his High School career.

**<u>COUNT VII</u>**
**BREACH OF CONTRACT: BULLYING**

## DEFENDANT SCHOOL DISTRICT

136.    Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

137.    The unilateral announcement of school polices, procedures and practices at the school may be treated as an offer subject to a student's acceptance, expressed by the continued attendance at said school and performance of duties as a student, upon which enforceable contract terms will be formed. See Panto v. Moore Business Forms, Inc., 130 NH 730, 735 (1988) (holding the same in context of employee handbook).

138.    Page 17 of the 2011- 2012 Prospect Mountain High School Student and Parent Handbook provides the following information regarding bullying;

    a.    "Bullying is defined as a single significant incident or pattern of incidents involving a written, verbal or electronic communication, or a physical act or gesture, or any combination thereof, directed at another student which;

        1.    Causes emotional distress to pupil;

        2.    Interferes with a pupil's educational opportunities;

        3.    Creates a hostile education environment…"

    b.    "Bullying will not be tolerated and perpetrators will be subject to appropriate disciplinary action as determined by the administration."

139.    Every student was given a copy of this handbook, or provided access to the handbook, at the start of the school year. M.J. was given a copy of this handbook, or provided access to the handbook, at the start of the school year.

140.    The information contained within these statements by the defendant school district creates a contract between the school and its students.

141.     A term of that contract is that bullying, in any form, will not be tolerated.

142.     Protection from bullying is a serious consideration for any student entering in to an educational endeavor.

143.     The defendant school district breached this contract when they failed to take action when Coach Noyes took actions against plaintiff M.J., described more fully above and herein, which constitute bullying under this contract.

144.     Additionally, the defendant school district allowed a child to bully the plaintiff M.J. in breach of their Handbook.

145.     Allowing such bullying to take place was in breach of the contract between plaintiff M.J. and the defendant school district

146.     A child was threatening and bullying plaintiff M.J. with threats of violence and threats of using a knife to attack him.

147.     These threats occurred for months with no action being taken to prevent it by the defendant school district.

148.     According to their Handbook, the defendant school district had a contractual duty to protect the plaintiff M.J. from this type of behavior.

149.     The plaintiff M.J. was forced to file a complaint with the Alton Police Department when the defendant school district failed to take action against this student's bullying.

150.     As a result of this breach of duty, plaintiff M.J. endured mental pain suffering, and anguish; decline in academic performance; the costs associated with moving school districts; damages in ongoing legal fees, costs, and expenses; delay, loss of opportunity, lost interest, and resulting possible decline in lifetime earning capacity and opportunity due to the disruption in his High School career.

**COUNT VIII**
**BREACH OF CONTRACT: HARASSMENT**
**DEFENDANT SCHOOL DISTRICT**

151.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

152.     Page 40 of the 2011-2012 Prospect Mountain High School Student and Parent Handbook provides the following information regarding Harassment;

    c.   "Prospect Mountain High School believes that students and employees have the right to be free from illegal discrimination or harassment… All students and employees should be able to work in an environment free from all forms of discrimination, intimidation and harassment… All students and employees must treat each other with courtesy and consideration."

    d.   "It shall be a violation of this policy for any student or employee to harass a student or an employee through conduct or communication of a discriminatory nature as defined by this policy."

    e.   "Prospect Mountain High School will act to investigate all complaints, formal or informal, verbal or written, of unlawfully harassment…"

153.     The handbook goes on to define Unlawful Harassment as follows: "Harassment refers to unreasonable conduct or behavior which is personally offensive or threatening, impairs morale, or interferes with the work of the educational environment."

154.     Through telephone calls and email correspondence of the plaintiff's representatives during the 2011-2012 school year, and it is believed by the reports of

others previously, the defendant school district was informed of the occurrences of harassment perpetuated by Coach Noyes.

155.    On Friday May, 4, 2012 Mrs. Johnson and Mr. Johnson informed Principal J. Fitzpatrick of discrimination that was witnessed during a baseball practice on May 3, 2012. During that practice Coach Noyes forced M.J. to catch an inordinate amount of pitches without a break. M.J. was suffered to act as catcher continuously in a non-stop fashion not typical to the sport, until he finally had to stop due to pain. The Plaintiff M.J., a minor child, was singled out for this cruel and abusive treatment as a retaliatory and discriminatory action.

156.    Principal Fitzpatrick was further informed that during the May 3, 2012 practice it was also noticed that some of the players had been allowed to disparage other players on the team. The coach sanctioned this harassment by non-action. The school district, town, and State, sanctioned it by non-action.

157.    Principal Fitzpatrick in his role as principal is required by the student handbook to respond to all complaints.

158.    Principal Fitzpatrick offered no response to this complaint.

159.    On May 22, 2012 Mrs. Johnson sent a follow up complaint to J. Fitzpatrick by email. The email contained the following language: "What has transpired over the course of this baseball season is absolutely unacceptable. Can you both, honestly look us in the eye and tell us that retaliation does not happen and is not an accepted practice at PMHS?" the letter goes on to say:

> "I spent a lot of time on the phone today speaking to various
>
> organizations. Discrimination in any form, regardless of whether it is educational

or sports related is against the law if a school receives federal funding and the school can be held liable.

Jay, you told me self-esteem falls under safety. Our son's "safety" is our main concern perhaps you are of the mind that because [name redacted] has applied to New Hampton that this too shall pass? Clearly you underestimate how very angry we are…."

160.    Principal Fitzpatrick in his role as principal is required by the student handbook to respond to all complaints.

161.    Principal Fitzpatrick offered no response to this complaint.

162.    By email dated May 22, 2012 Mrs. Johnson informed an agent of the defendant school district of the following information: "Because of all that has been happening and [name redacted] knowledge (limited, but definitely aware) of how my time on the school board is still a source of contention for some people that interact with him on a daily basis he is feeling *less and less comfortable*." The email goes on to say "As long as he cannot receive a fair, well-rounded education free from discrimination while under the care of anyone employed at PMHS, we have a very big problem. The downward spiral in grades since baseball began is not a coincidence. *It is a symptom*."

163.    This email describes a series of events which would fall under the definition of discrimination and harassment under the contract contained within the parent teacher handbook.

164.    By taking no action in regards to Coach Noyes for this harassment, the defendant school district is in breach of contact with plaintiff M.J.

165.    As a result of this breach of duty, plaintiff M.J. endured mental pain suffering,

and anguish; decline in academic performance; the costs associated with moving school districts; damages in ongoing legal fees, costs, and expenses; delay, loss of opportunity, lost interest, and resulting possible decline in lifetime earning capacity and opportunity due to the disruption in his High School career.

## COUNT IX
### BREACHED OF CONTRACT: RETALIATION/ REPRISAL
### DEFENDANT SCHOOL DISTRICT

166.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

167.     Page 43 of the Prospect Mountain High School Student and Parent Handbook provides the following information regarding Reprisal, in pertinent part:

   a.   "Prospect Mountain High School will discipline any individual who retaliates against any person who reports alleged unlawful harassment… Retaliation includes, but is not limited to, any form of intimidation, reprisal or harassment."

168.     Coach Noyes was informed that complaints were made against him.

169.     Coach Noyes discriminated against and retaliated against M.J. after having been informed of M.J.'s compliant and he began to treat M.J. in an even more discriminatory manner.

170.     As cited above, and herein, M.J. was treated differently at practice and games than other players of like skill.

171.     M.J. was not rostered for the playoffs and was told of this fact immediately after complaints were made against Coach Noyes.

172.     M.J. was the only player on the team not rostered by Coach Noyes to play in the playoffs. Coach Noyes informed other players and their parents that M.J. was specifically

not invited to play in the playoffs.

173.     Defendant school district was informed of this reprisal through their agent

Principal J. Fitzpatrick who received an e-mail on May 22, 2012 summarizing these facts.

174.     Defendant school district failed to carry out its duty under the contract when they

failed to discipline, supervise or otherwise take corrective action with Coach Noyes.

175.     As described herein, Coach Noyes was not simply training M.J. in an NHIAA

compliant manner, but rather specifically singling him out for retaliatory and

discriminatory treatment that went above and beyond the usual coach/player dynamic and

was for the purpose of exacting a political point, at the behest of Terri Noyes, or

otherwise in a retaliatory manner for properly filed complaints.

176.     As a result of this breach of duty, plaintiff M.J. endured mental pain suffering,

and anguish; decline in academic performance; the costs associated with moving school

districts; damages in ongoing legal fees, costs, and expenses; delay, loss of opportunity,

lost interest, and resulting possible decline in lifetime earning capacity and opportunity

due to the disruption in his High School career.

## <u>COUNT X</u>
## DEFENDANT SCHOOL DISTRICT BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING

177.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein,

as if fully stated within this count.

178.     "In every agreement, there is an implied covenant that the parties will act in good

faith and fairly with one another." <u>Livingston v. 18 Mile Point Drive, Ltd.</u>, 158 NH 619,

624 (2009).

179.     The function of the implied covenant is to "prohibit behavior inconsistent with the

parties' agreed-upon common purpose and justified expectations . . . as well as 'with common standards of decency, fairness and reasonableness.' "Id. at 625, *quoting* Richard v. Good Luck Trailer Court, 157 N.H. 65, 70 (2008).

180.    As cited above, the plaintiff M.J. and the defendant school district formed a contract governed by the terms of the student handbook. See Panto, 130 NH at 735. *cited above* (finding a contract formed by a handbook).

181.    The common purpose here and justified expectation was to allow the Plaintiff M.J. "a safe, positive, and productive learning environment" governed by the mutual rights and responsibilities of the parties.

182.    Defendant school district's actions were inconsistent with justified expectation of M.J. and contrary to community standards of fairness, decency and reasonableness.

183.    The defendant school district, has violated the covenant in the following ways:

   a.   Breaching the terms as of contract as described herein;

   b.   Failing to abide by its own rules and regulations governing the complaint and redress reporting process;

   c.   Failing to discipline or take corrective action with regards to the complaints lodged against it's agents;

   d.   Failing to conduct a full and fair investigation;

   e.   Stonewalling equitable relief seeking only enforcement of their own policies, procedures, and the promised investigation of their liability carrier Primex3;

184.    As a result of this breach of the covenant of good faith and fair dealing, plaintiff M.J. endured mental pain suffering, and anguish; decline in academic performance; the costs associated with moving school districts; damages in ongoing legal fees, costs, and expenses; delay, loss of opportunity, lost interest, and resulting possible decline in lifetime earning capacity and opportunity due to the disruption in his High School career.

### COUNT XI
### DEFENDANT SCHOOL DISTRICT IS LIABLE UNDER THE DOCTRINE OF *RESPONDEAT SUPERIOR* FOR THE NEGLIGENCE OF THEIR AGENTS COACH NOYES AND J. FITZPATRICK

185.    Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

186.    As part of his employment Coach Noyes has a duty to decide who plays baseball in a manner that is not discriminatory as is laid out in the NHIAA handbook.

187.    Coach Noyes breached that duty with regards to M.J.

188.    Defendant school district is liable for Coach Noyes' negligence under the doctrine of *Respondeat Superior.*

189.    "Under respondeat superior, 'an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope or his or her employment when his or her tortious act injured the plaintiff.'" Porter v. City of Manchester, 151 N.H. 30, 39-40 (2004) *citing* Pierson v. Hubbard, 147 N.H. 760, 766 (2002).

190.    Here Coach Noyes' negligence occurred in the scope of his employment for the Defendant school district as the school's baseball coach, and injured M.J.

191.    As described herein, Coach Noyes was not simply training M.J. in an NHIAA compliant manner, but rather specifically singling him out for retaliatory and discriminatory treatment that went above and beyond the usual coach/player dynamic and was for the purpose of exacting a political point, at the behest of Terri Noyes, or

otherwise in a retaliatory manner for properly filed complaints.

192.     Similarly, the principal J. Fitzpatrick had a duty of care to the student and to M.J. as outlined in the handbook and State law.

193.     Defendant J. Fitzpatrick breached said duties as described herein by not following the reporting protocols, supervising, discharging or taking corrective actions against his staff or other bullies.

194.     As a result of these breaches of duty, plaintiff M.J. endured mental pain suffering, and anguish; decline in academic performance; the costs associated with moving school districts; damages in ongoing legal fees, costs, and expenses; delay, loss of opportunity, lost interest, and resulting possible decline in lifetime earning capacity and opportunity due to the disruption in his High School career.

## COUNT XII
## NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DEFENDANT SCHOOL DISTRICT

195.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

196.     Coach Noyes used his role as an authority figure to actively and continuously inflict emotional distress upon M.J.

197.     The harassment and discrimination executed by Coach Noyes were beyond all bounds of decency in society because of his authoritative role over M.J., the powerlessness of M.J., and the age difference between the parties.

198.     This distress affected the M.J.'s school work and finally made being at school unbearable for him.

199.     The distress inflicted by Coach Noyes has caused M.J. life long and irreparable

harm for mental anguish.

200.     The harassment and discrimination occurred during Coach Noyes' employment
by the defendant school district, and they failed to investigate accusations when presented
with them.

201.      "Under respondeat superior, 'an employer may be held vicariously responsible
for the tortious acts of its employee if the employee was acting within the scope or his or
her employment when his or her tortious act injured the plaintiff.'" Porter v. City of
Manchester, 151 N.H. 30, 39-40 (2004) *citing*. Pierson v. Hubbard, 147 N.H. 760, 766
(2002).

202.     Here Coach Noyes' commission of the intentional tort, intentional infliction of
emotional distress occurred in the scope of his employment for the defendant school
district as the school's baseball coach, and injured M.J..

203.     As described herein, Coach Noyes was not simply training M.J. in an NHIAA
compliant manner, but rather specifically singling him out for retaliatory and
discriminatory treatment that went above and beyond the usual coach/player dynamic and
was for the purpose of exacting a political point, at the behest of Terri Noyes, or
otherwise in a retaliatory manner for properly filed complaints.

204.     The defendant school district is vicariously liable for the torts committed by
Coach Noyes under the doctrine of respondeat superior.

205.     As a result of this breach of duty, plaintiff M.J. endured mental pain suffering,
and anguish; decline in academic performance; the costs associated with moving school
districts; damages in ongoing legal fees, costs, and expenses; delay, loss of opportunity,
lost interest, and resulting possible decline in lifetime earning capacity and opportunity

due to the disruption in his High School career.

## COUNT XIII - Primex3
## BREACH OF CONTRACT

206.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

207.     Primex3 by letter dated July 2, 2012 made a promise to M.J.'s representatives. See Exhibit B.

208.     Primex3 promised the following:

    a.     "we will initiate our investigation of the allegations you assert in your letter."

    b.     "we will take a position on the claim."

209.     M.J. and Mother J and Father J reasonably relied on these promises and in consideration thereof, incurred additional legal expense in attempted negotiation and suffered delay in foregoing legal rights and remedies available to them.

210.     Therefore, Primex3 made a promise, it was accepted by M.J., Mother J and Father J, consideration was passed, and a contract formed.

211.     Primex3 never investigated the allegations.

212.     Even if Primex3 did investigate the allegations, they did not conduct a full, proper, or thorough investigation.

213.     Even if Primex3 did conduct a legally sufficient investigation, they did not "take a position on the claim."[1]

214.     Therefore, Primex3 breached the contract they formed with M.J. by letter dated

---

[1] To address an inevitable defensive counter:  Primex3 issued a letter dated December 27, 2012, in which they claim an inability to understand allegations contained in a Superior Court *EQUITY* petition.  This letter addressed an equity Petition in Superior Court, and *not* the detailed letter of June 2012 for which promises of an investigation were made and broken, and for which there was no indication of confusion.  Therefore, the December 27, 2012 letter is inapplicable as a defense to this breach of contract claim based on the July 2, 2012 letter.

July 2, 2012.

215.     Due to Primex3's breach, M.J. suffered damages in ongoing legal fees, costs, and

expenses; delay, loss of opportunity, lost interest, and prolonged emotional distress,

mental pain suffering and anguish.

### COUNT XIV - Primex3
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

216.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein,

as if fully stated within this count.

217.     "In every agreement, there is an implied covenant that the parties will act in good

faith and fairly with one another." Livingston v. 18 Mile Point Drive, Ltd., 158 NH 619,

624 (2009).

218.     The function of the implied covenant is to "prohibit behavior inconsistent with the

parties' agreed-upon common purpose and justified expectations . . . as well as 'with

common standards of decency, fairness and reasonableness.' "Id. at 625, *quoting* Richard

v. Good Luck Trailer Court, 157 N.H. 65, 70 (2008).

219.     The common purpose here and justified expectation was to allow the Plaintiff

M.J. and his representatives through the Primex3 coverage program to investigate and

resolve their claims without the need to resort to the Court system.

220.     Defendant Primex3's actions, in conjunction with the defendant school district,

have been patently inconsistent with fairness, decency and reasonableness.

221.     Defendant Primex3, in conjunction with the defendant school district, has violated

the covenant in the following ways:

    a.  By promising to conduct an investigation and failing to conduct any investigation;

b. By promising to take a position on the allegations first presented in June/July 2012 and then failing to take any positions on those allegations;

c. By lying and later claiming that they did not know what the allegations were;

d. By lying and later claiming that they did not know who the plaintiffs were;

e. By generally stonewalling, denying, and delaying redress in every conceivable manner against all common sense.

222.    Due to Primex3's breach, M.J. suffered damages in ongoing legal fees, costs, and expenses; delay, loss of opportunity, lost interest, and prolonged emotional distress, mental pain suffering and anguish.

## COUNT XV- Primex3
## BREACH OF CONTRACT UNDER THEORY OF INDEPENDENT THIRD PARTY BENEFICIARY

223.    Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein, as if fully stated within this count.

224.    Primex3 exists for the benefit of political subdivisions of the State.

225.    The defendant school district is a political subdivision of the State. RSA 5-B:2(III).

226.    The plaintiff M.J. was a student of the political subdivision and is intended to be entitled to the benefits of the school district.

227.    Defendant school district has a contract with Primex3 which would provide investigation and/or compensation for third parties under a property and liability program.

228.    Students are intended and foreseeable beneficiaries of such contracts.

229.    "A third-party beneficiary relationship exists if (1) the contract calls for a performance by the promisor which will satisfy some obligation owed by the promisee to

the third party, or (2) the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract." <u>Tamposi Associates v. Star Mkt. Co.</u>, 119 NH 630, 633 (1979).

230.     It is alleged that the defendant school district owes a duty of care, both in tort and in contract, which was breached.  Therefore, the defendant school district is liable for the damages resulting from said breach, as outlined herein.

231.     Primex3 is thus the promisor, who has contracted with the school district promisee, to investigate and/or compensate third parties such as the plaintiff student M.J.

232.     Alternatively, the property and liability contract between Primex3 and the school district is so expressed as to give Primex3 reason to know that they are liable to third parties, such as students, for breach of any duty or promise of the defendant school district.

233.     The plaintiff M.J. is aware of said contract by operation of law under RSA 5-B:2 providing for an annual informational filing.

234.     The plaintiff M.J. reasonably relied on this contract both before and after receiving Primex3's July 2, 2012 letter. Exhibit B.

235.     Primex3 breached the contract, to the determent of the plaintiff M.J. and his representatives.[2]

236.     Plaintiff M.J. and his representatives have been injured by these unfair or

---

[2] Primex3 offered to conduct the investigation that the Plaintiffs originally sought.  Why they ultimately breached the contract and stonewalled any investigation remains to be uncovered.  When and if the Plaintiffs uncover facts to reveal that any third party interfered with the contract, they intend to, and hereby reserve the right to, assert claims for tortious interference with contractual relations as an incidental beneficiary as contemplated in <u>Tamposi Associates</u>, 119 NH at 633-634. (claim ultimately rejected by the Court citing a failure to plead that the interfering party had any knowledge of the contract and its interference).

deceptive acts or practices in ongoing legal fees, costs, and expenses; delay, loss of

opportunity, lost interest, and prolonged emotional distress, mental pain suffering and

anguish.


### COUNT XVI - Primex3
### RSA 358-A UNFAIR OR DECEPTIVE ACTS OR PRACTICES

237.        Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein,

as if fully stated within this count.

238.        As described herein, Primex3 committed unfair or deceptive acts or practices in

the handling of these claims when first presented to them in or around June 2012.

239.        After being informed of serious risk of liability as outlined in this complaint, by a

confidential and non-public letter dated June 26, 2012, Primex3 indicated it would

conduct an investigation. See Exhibit B.

240.        RSA 358-A:2 proscribes a non-exhaustive list of *per se* unfair or deceptive acts or

practices and leaves the door open to other unfair or deceptive acts or practices by

specifically not limiting the list. ("Such unfair method of competition or unfair or

deceptive act or practice shall include, but is not limited to, the following:"). RSA 358-

A:2.

**241.        Primex3 committed the following *per se* violations:**

   a.   " II. Causing likelihood of confusion or of misunderstanding as to the source,

        sponsorship, approval, or certification of goods or services; " RSA 358-A:2(II)

        When Primex3 indicated that it would conduct an investigation and take a

        position, and later failed to do so instead having Atty. Dona Feeney oppose an

        investigation, it caused a likelihood of confusion or misunderstanding as to the

source or sponsorship of the services of Primex3 and the School District's and Primex3's legal representation.

b.  "III. Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;" RSA 358-A:2(III). When Primex3 indicated that it would conduct an investigation and take a position, and later failed to do so instead having Atty. Dona Feeney oppose an investigation, it caused a likelihood of confusion or misunderstanding as to affiliation, connection or association of Primex3, the School District's, and each party's respective legal representation, affiliation, connection or association.

242.    **Primex3 also violated RSA 358-A generally in the following manner:**

a. It was unfair for Primex3 to delay the investigation into plaintiff M.J.'s allegations;

b. It was deceptive for Primex3 to  say they would conduct an investigation and take a position, and then fail to do so;

c. It was unfair or deceptive for Primex3 to later claim that it did not have a definitive set of allegations to investigate;

d. It continues to be unfair or deceptive for Primex3 to continue to fail to conduct an investigation into these allegations and take a position on them;

e. It continues to be unfair or deceptive for Primex3 to cause confusion as to their involvement or non-involvement in these legal proceedings and their legal representation and the legal representation of their member, the defendant school district.

243.    Plaintiff M.J. and his representatives have been injured by these unfair or

deceptive acts or practices in ongoing legal fees, costs, and expenses; delay, loss of

opportunity, lost interest, and prolonged emotional distress, mental pain suffering and

anguish.


## COUNT XVII - INVASION OF PRIVACY
## PUBLIC DISCLOSURE OF PRIVATE FACTS
## DEFENDANT SCHOOL DISTRICT

244.    Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs herein,

as if fully stated within this count.

245.    New Hampshire Courts recognize the tort of invasion of privacy through public

disclosure of private facts. See <u>Karch v. Baybank FsB</u>, 147 NH 525 (2002).

246.    Upon information and good faith belief, agents of the defendant school district

have disseminated private and confidential information about the plaintiff M.J. to the

School Board, or school board members, or others.

    a.    To wit- In July 2012 a community member approached Mrs. Johnson and

        inquired as to why they were "suing Bubba."

247.    Such information disseminated may be protected under The Family Educational

Rights and Privacy Act  ("FERPA") 20 U.S.C. § 1232g.

248.    "Whether publicity is achieved by broadcasting something private to a few people

or to the masses is a conclusion best reached by the trier of fact." <u>Id</u> at 535.

249.    If it is revealed that the defendant school district, or its agents, publicly disclosed

private facts of the plaintiff M.J., the defendant school district, or its agents individually,

will be liable to the plaintiff M.J. in tort.

250.    Wherefore, plaintiff M.J. seeks all legal and equitable relief to be made whole for

this tort.

## <u>CONCLUSION</u>

251.     Through the unfair or deceptive acts and practices, Constitutional deprivations,

negligence, and breaches of contract described herein- all defendants had a hand in

depriving or debasing the lifelong learning experience and development of plaintiff M.J.

WHEREFORE, Plaintiff prays for the following relief:

    a.  Damages, double damages, or triple damages; plus costs and attorney's fees under

        RSA 358-A:10.

    b.  Damages under 42 U.S.C. 1983 or other rule or statute;

    c.  Attorney's fees allowed for under 42 U.S.C. § 1988 or other rule, statute, or

        contract;

    d.  Compensatory damages, including, general and special damages to be determined

        by the finder of fact;

    e.  Exemplary and punitive damages;

    f.  Pre- and Post-judgment interest;

    g.  Declaratory Judgment and Relief;

    h.  All other compensatory, equitable, declaratory, legal or injunctive relief as this

        Court deems just.

## JURY TRIAL REQUESTED

September 19, 2013                               Respectfully submitted,
                                                PLAINTIFFS
                                                By Their Attorneys

                                                /s/John F. Skinner, III
                                                Atty. John F. Skinner, III

Skinner Rivard Law Offices
530 Chestnut Street, 3rd Floor
Manchester, NH 03101
Tel: (603) 622-8100
Fax: (888) 912-1497
AttorneySkinner@gmail.com
NHBN:19886

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants as of the date of filing.

Convention service by US mail, or as otherwise allowed by law, shall be timely effected on:

Primex3
Bow Brook Place,
46 Donovan Street,
Concord, NH 03301

J. Fitzpatrick
242 Suncook Valley Road,
Alton, NH 03809

/s/ John F. Skinner, III
John F. Skinner, III

Dated: September 19, 2013