**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Cydney Johnson and Dan
Johnson, on behalf of, and
as next friend of, M.J.

    v.

Civil No. 13-cv-207-LM
Opinion No. 2014 DNH 128

Prospect Mountain JMA School
District SAU 301; Primex[3]; and
J. Fitzpatrick, individually
and as Principal of Prospect
Mountain High School

**O R D E R**

On behalf of their minor son, M.J., Cydney Johnson ("Mrs.
Johnson") and Dan Johnson have sued three defendants in
seventeen counts, asserting federal and state claims arising
from the treatment M.J. received while he was a student at
Prospect Mountain High School ("PMHS"). Under federal law,
plaintiffs assert claims against Prospect Mountain JMA School
District SAU 301 ("School District") and PMHS principal J.
Fitzpatrick for violating M.J.'s: (1) Fourteenth Amendment
equal-protection rights; (2) Fifth and Fourteenth Amendment due-
process rights; and (3) Fifth and Fourteenth Amendment rights.
In addition, while it is not entirely clear, plaintiffs may be
asserting, in Count XVII, a claim against the School District
under the federal Family Educational Rights and Privacy Act.
Counts IV-XVII assert claims under state law against the School

District, Fitzpatrick, and Primex[3].[1]  Before the court are one
motion to dismiss filed by the School District and Fitzpatrick
and two motions to dismiss filed by Primex[3].  Plaintiffs object.
For the reasons that follow, plaintiffs' federal claims are
dismissed pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure, and the court declines to exercise supplemental
jurisdiction over the remaining state-law claims.

### A Preliminary Matter

The court begins by addressing several confusing aspects of
plaintiffs' complaint.  Counts I-III assert claims against
Fitzpatrick and the School District.  Regarding Fitzpatrick,
plaintiffs have sued him in both his official and individual
capacities, which are legally distinct, see Goldstein v. Galvin,
719 F.3d 16, 23 (1st Cir. 2013) ("a person sued in his official
capacity is a different party, in contemplation of law, than the
same person sued in his individual capacity").  However, nothing
in the complaint indicates whether the claims in Counts I-III
are being asserted against Fitzpatrick in his individual
capacity, his official capacity, or both.  The court will
resolve that ambiguity by construing the complaint as asserting

---

[1] According to plaintiffs, Primex[3] is a trade name used by
the New Hampshire Public Risk Management Exchange.  First Am.
Compl. (doc. no. 38) ¶ 7.

the claims in Counts I-III against Fitzpatrick in both of his
capacities.  That said, in the analysis that follows, the court
will use the term "School District" to refer, collectively, to
the School District and Fitzpatrick acting in his official
capacity, because "an official capacity suit is, in all respects
other than name, to be treated as a suit against the entity" for
which the official-capacity defendant is acting as an agent, id.
(quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)).

A second unusual aspect of plaintiffs' complaint concerns
their characterization of the causes of action on which they
base Counts I-III.  Counts I and II are labeled constitutional
claims, while Count III is captioned as a claim under 42 U.S.C.
§ 1983.  That statute provides, in pertinent part, that

> [e]very person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> . . . subjects, or causes to be subjected, any citizen
> of the United States . . . to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party
> injured in an action at law . . . .

Id.  However:

> There is no separate cause of action for a violation
> of § 1983.  Cruz-Erazo v. Rivera-Montanez, 212 F.3d
> 617, 620 (1st Cir. 2000).  Rather, § 1983 is the
> vehicle through which an individual may bring suit for
> constitutional violations.

Goldblatt v. Geiger, 867 F. Supp. 2d 201, 213 (D.N.H. 2012).
Accordingly, the court treats all of plaintiffs' constitutional
claims as having been brought through the vehicle of § 1983.

### Standard of Review

Ruling on a motion to dismiss for "failure to state a claim
upon which relief can be granted," Fed. R. Civ. P. 12(b)(6),
requires the court to conduct a limited inquiry, focusing not on
"whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claims."
Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  When considering
such a motion, a trial court "accept[s] as true all well-pled
facts in the complaint and draw[s] all reasonable inferences in
favor of plaintiffs." Plumbers' Union Local No. 12 Pension Fund
v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir.
2011) (quoting SEC v. Tambone, 597 F.3d 436, 441 (1st Cir.
2010)).

To survive a Rule 12(b)(6) motion, a complaint "must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" González-
Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 247 (1st Cir.
2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009);
citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

4

On the other hand, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Katz v. Pershing, LLC, 672 F.3d 64, 73 (1st Cir. 2012) (quoting Tambone, 597 F.3d at 442).

## Background

The facts in this section are drawn from the complaint. See Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013) (citing Rodríguez-Reyes v. Molínar-Rodríguez, 711 F.3d 49, 51 (1st Cir. 2013)). Mrs. Johnson is a former member of the PMHS School Board ("School Board" or "Board"). Due to her service on the Board, a number of Board members and PMHS employees "subjected [her] to threats, false police reports, defamation of character, and other troubling behavior[s]." First Am. Compl. (doc. no. 38) ¶ 12. Toward the end of Mrs. Johnson's tenure on the Board, one member, Terri Noyes ("Mrs. Noyes") said to Mrs. Johnson "your time will come." Id. ¶ 24.

Abuse was directed not only at Mrs. Johnson, but also at her family, including M.J. For example, M.J. played on the PMHS baseball team. He was coached by Mrs. Noyes's husband ("Coach Noyes"). He, in turn, worked M.J. excessively hard, restricted his practice and playing time, verbally abused him, threw a

scorebook at him, and enforced "NHIAA rules" against him that he did not enforce against other players.  In addition, a PMHS teacher, Brian Hikel, disciplined M.J. for behavior, such as "high-fiving," for which other students were not disciplined. Hikel also made "rude or disrespectful comments" to M.J. and his parents.

The Johnsons complained to Fitzpatrick about the treatment M.J. was receiving at PMHS, and they met with Fitzpatrick and other PMHS administrators on several occasions to discuss their complaints.  Those administrators repeatedly told the Johnsons that they were afraid of retaliation by Mrs. Noyes.  During a meeting on April 14, 2012, the Johnsons were specifically told that no action would be taken on an issue they had raised because Fitzpatrick feared retaliation by Mrs. Noyes.  Upon discovering that the Johnsons had complained to Fitzpatrick, Coach Noyes "intensified his harassment[]" of M.J.  First Am. Compl. ¶ 42.  Eventually, the Johnsons placed M.J. in another school.

## Discussion

Given the overlap created by plaintiffs' decision to plead constitutional claims in Counts I and II and to identify § 1983 as the cause of action in Count III, it makes more sense to

focus the following discussion on plaintiffs' specific
constitutional claims rather than to proceed on a count-by-count
basis.  There are three constitutional rights at issue in this
case, i.e., M.J.'s rights to equal protection, substantive due
process, and procedural due process.  In their objection to the
motion for summary judgment filed by the School District and
Fitzpatrick, plaintiffs refer to M.J.'s "fundamental
constitutional right[] to education," doc. no. 35, at 11.
Education, however, is not a constitutional right; it is a
fundamental right, granted by the state, which must be provided
in accordance with constitutional principles.  See Goss v.
Lopez, 419 U.S. 565, 572-73 (1975).  When discussing each of the
three constitutional rights at issue, the court begins by
considering Fitzpatrick in his individual capacity and then
turns to the School District, which includes Fitzpatrick in his
official capacity.  After considering each of the three relevant
constitutional rights, the court discusses the federal statutory
claim that plaintiffs may be raising in Count XVII, and then
concludes by addressing plaintiffs' claims under state law.

A. Equal Protection

The crux of plaintiffs' equal-protection claims is that
while M.J. was a student at PMHS, he was treated less

advantageously than other PMHS students on account of his family background and his parents' political views.  Ordinarily, equal-protection claims arise when a member of a protected class, such as a racial minority, is treated less advantageously than people outside the protected class.  But, the Supreme Court has recognized, and the First Circuit has embraced, an equal-protection theory based upon adverse treatment meted out to a person who is not a member of a protected class but, rather, is a member of a class of one.  See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Gianfrancesco v. Town of Wrentham, 712 F.3d 634, (1st Cir. 2013); Middleborough Veterans' Outreach Ctr., Inc. v. Provencher, 502 F. App'x 8, 10 (1st Cir. 2013). "Under the class-of-one rubric, an equal protection plaintiff may press a claim 'that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment,' even where he does 'not [show] membership in a class or group.'" Gianfrancesco, 712 F.3d at 639 (quoting Olech, 528 U.S. at 564). Here, plaintiffs are pressing class-of-one equal-protection claims against Fitzpatrick and the School District.

    1. Fitzpatrick

    Plaintiffs claim that M.J. was bullied and harassed by a PMHS coach and a PMHS teacher, and that Fitzpatrick "fail[ed] to

8

enforce the terms of [the PMHS] student handbook, and apply the
rules and protocols required of [him] for the protection of M.J.
in a uniform and equal manner." First Am. Compl. (doc. no. 38)
¶ 59. Plaintiffs have failed to state a class-of-one equal-
protection claim against Fitzpatrick.

In Gianfrancesco, the First Circuit explained that "a
class-of-one plaintiff bears the burden of showing that his
comparators are similarly situated in all respects relevant to
the challenged government action." 712 F.3d at 640 (citing
Provencher, 502 F. App'x at 11-12; Rectrix Aerodrome Ctrs., Inc.
v. Barnstable Mun. Airport Comm'n, 610 F.3d 8, 16 (1st Cir.
2010)). Based upon that principle, the Gianfrancesco court
affirmed the district court's dismissal of a class-of-one equal-
protection claim where the complaint identified one comparator
but made "no effort to establish how or why the Anvil Pub [i.e.,
the comparator] [was] similarly situated to Tom's Tavern in any
relevant way, and [did] not mention any other putative
comparator." 712 F.3d at 640. Here, plaintiffs do not identify
even a single comparator who Fitzpatrick treated better than he
treated M.J. with regard to the enforcement of the PMHS student
handbook or any other rule or protocol. Accordingly,
Fitzpatrick is entitled to dismissal of the class-of-one equal-
protection claim that has been asserted against him.

9

As the court has noted, the conduct by Fitzpatrick on which plaintiffs base their equal-protection claim is his failure to enforce applicable protocols.  The complaint also describes conduct by Coach Noyes, and teacher Brian Hikel.  Had the coach and the teacher been named as defendants, thus bringing their conduct toward M.J. into play, and if plaintiffs had asserted class-of-one equal-protection claims against them, those claims would very likely be subject to dismissal for two reasons.

First, as with the claim against Fitzpatrick, plaintiffs have identified no specific comparators, i.e., similarly situated baseball players who Mr. Noyes treated better than he treated M.J., or similarly situated students who Hikel treated better than he treated M.J.

Beyond that, the applicability of the class-of-one rubric to the classroom setting is quite limited, given that so much of what educators do involves "discretionary decisionmaking based on a vast array of subjective, individualized assessments," Engquist v. Or. Dep't of Agric., 553 U.S. 591, 603 (2008); see also Kyung Hye Yano v. City Colls. of Chi., No. 08-CV-4492, 2013 WL 3791616, at *3 (N.D. Ill. July 19, 2013).  Class-of-one claims are available in the educational context only when the arbitrary treatment "has no conceivable connection to 'educational or safety concerns [and] exceeds the scope of

10

professionally acceptable choices[.]'" Yano, 2013 WL 3791616, at *3 (quoting Mathers v. Wright, 636 F.3d 396, 400 (8th Cir. 2011)).

Here, it is highly unlikely that plaintiffs could state a class-of-one equal-protection claim against either Coach Noyes or Hikel, because the conduct on which such a claim would be based falls so far short of the egregiousness of the mistreatment that supported such claims in Yano, 2013 WL 3791616, at *2 (ruling that class-of-one claim was stated based upon allegations that one teacher called student derogatory names and humiliated her in front of classmates, and second teacher followed student around campus and applied different grading system to her exams), and Mathers, 636 F.3d at 400 (ruling that class-of-one claim was stated where teacher refused to teach disabled student, isolated her during recess and fire drills, and made her crawl on the floor).

So, to restate, Fitzpatrick is entitled to dismissal of plaintiff's equal-protection claim against him.

## 2. The School District

Section 1983 claims are typically brought against individuals acting under color of state law. While § 1983 does not provide for the vicarious liability of government entities that employ individuals who commit constitutional violations,

see Freeman v. Town of Hudson, 714 F.3d 29, 37-38 (1st Cir. 2013) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)), there are certain circumstances under which a government entity may be held liable under § 1983, see generally Monell, 436 U.S. at 694.  But, because plaintiffs have failed to adequately allege an equal-protection violation by Fitzpatrick, there is no "need [to] consider whether [they have] pled a basis for municipal liability under Monell," Gianfrancesco, 712 F.3d at 640 n.4.  That is because "policy or practice aside, a municipality cannot be liable for the actions of its officials under Monell if those actions 'inflicted no constitution harm,'" id. (quoting Robinson v. Cook, 706 F.3d 25, 38 (1st Cir. 2013); citing City of L.A. v. Heller, 475 U.S. 796, 799 (1986)), and Fitzpatrick is the only PMHS employee against whom plaintiffs have asserted claims for inflicting constitutional harm.  Thus, the School District is entitled to dismissal of plaintiffs' equal-protection claim.

   B. Substantive Due Process

   The precise contours of plaintiffs' substantive due-process claims are somewhat difficult to discern.  However, construing the amended complaint in the manner most favorable to plaintiffs, it would seem that those claims rest upon inaction

in the face of their complaints about M.J.'s treatment, and/or
dissemination of those complaints to PMHS employees.

### 1. Fitzpatrick

Plaintiffs claim that Fitzpatrick violated M.J.'s
substantive due-process rights by failing to respond to their
complaints and by telling other school employees about them.
Assuming that plaintiffs have adequately identified a liberty
interest on which Fitzpatrick's conduct encroached, they have
still failed to state a claim on which relief can be granted.

To establish a substantive due-process claim, a "plaintiff
must show both that the [defendant's] acts were so egregious as
to shock the conscience and that they deprived him of a
protected interest in life, liberty, or property." Harron v.
Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011) (quoting
Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006); citing
Martínez v. Cui, 608 F.3d 54, 64 (1st Cir. 2010)) (emphasis
omitted).  With regard to the first element of a substantive
due-process claim, the court of appeals has recently described
the applicable legal standard:

> "There is no scientifically precise formula for
> determining whether executive action is — or is not —
> sufficiently shocking to trigger the protections of
> the substantive due process branch of the Fourteenth
> Amendment." Pagán, 448 F.3d at 32.  However, certain
> principles have emerged from the case law.  Executive
> acts that shock the conscience must be "truly

13

outrageous, uncivilized, and intolerable," Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999), and "the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error," Amsden v. Moran, 904 F.2d 748, 754 n.5 (1st Cir. 1990).  Indeed, "[a] hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." González-Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir. 2010) (internal quotation marks and ellipses omitted).

Harron, 660 F.3d at 536.

Here, the court cannot say that any of the things that Fitzpatrick is alleged to have done (or not done) amounted to a violation of M.J.'s substantive due-process rights.  Failing to properly investigate parental complaints and failing to keep those complaints confidential are not such stunning or egregious acts that they shock the conscience.  Thus, Fitzpatrick is entitled to dismissal of plaintiffs' substantive due-process claim against him.

### 2. The School District

Because plaintiffs have failed to state a substantive due-process claim against Fitzpatrick, the School District is also entitled to dismissal of plaintiffs' substantive due-process claim.  See Gianfrancesco, 712 F.3d at 640 n.9.

C. Procedural Due Process

As with plaintiffs' substantive due-process claims, the contours of their procedural due-process claims are not easy to discern from their complaint.  Their objection to defendants' motion to dismiss, however, identifies four government decisions on which the claims may be based: (1) "the decision to retain . . . Coach . . . Noyes after many years of complaints" against him, Pl.'s Obj. (doc. no. 35) 8; (2) Hickel's decision to treat M.J. differently than other students; (3) the PMHS administration's failure to properly document, address, or investigate plaintiffs' complaints; and (4) PMHS's failure to conduct an investigation into those complaints.

1. Fitzpatrick

The court begins by noting that the second and fourth bases for plaintiffs' procedural due-process claim against Fitzpatrick are insufficient as a matter of law; the second is based exclusively upon conduct by Hikel, while the fourth, as described in plaintiff's objection, is based solely upon the conduct of Primex[3].  Thus, construed most favorably to plaintiffs, their complaint asserts procedural due-process claims against Fitzpatrick for retaining Coach Noyes and failing to properly handle their complaints.

15

"To state a procedural due process claim under § 1983, the plaintiff must allege facts which, if true, establish that the plaintiff (1) had a property interest of constitutional magnitude and (2) was deprived of that property interest without due process of law." Clukey v. Town of Camden, 717 F.3d 52, 55-56 (1st Cir. 2013) (citing García–Rubiera v. Fortuño, 665 F.3d 261, 270 (1st Cir. 2011)).  The court has no trouble concluding that in this case, M.J. had a property interest of constitutional magnitude.  As Judge Muirhead explained in a case in which parents challenged their son's expulsion from school:

> when a state elects to provide free education to all youths, as in New Hampshire, the state is "constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause.

Johnson v. Collins, 233 F. Supp. 2d 241, 247 (D.N.H. 2002) (quoting Goss, 419 U.S. at 574).

The problem with plaintiffs' procedural due-process claim is that they have not adequately alleged a deprivation of M.J.'s right to a public education.  As Judge Muirhead's decision in Johnson suggests, the typical procedural due-process claim in the educational setting involves a challenge to a decision to suspend or expel a student, and the constitutional violation occurs when such a decision is made without giving the student

16

sufficient process before imposing discipline.  See Johnson, 233 F. Supp. 2d at 247-51; see also Goss, 419 U.S. at 573-84.

Here, however, plaintiffs do not allege that Fitzpatrick made any decision that limited M.J.'s right to attend PMHS.  To be sure, they allege that some of Fitzpatrick's actions and/or his failures to act resulted in making PMHS unpleasant for M.J.  But, still, it cannot reasonably be argued that, for example, M.J. had a constitutional right to notice and a hearing every time Fitzpatrick made a decision regarding Coach Noyes's continued employment as PMHS's baseball coach.  In other words, M.J.'s right to a public education did not extend so far as to give him a property interest in PMHS's personnel decisions, and retaining (or not discharging) Coach Noyes did not deprive M.J. of his right to a public education.  As for the way in which Fitzpatrick handled their complaints, plaintiffs themselves allege that Fitzpatrick met with them on several occasions.  See First Am. Compl. ¶¶ 34, 44-45.  Thus, when plaintiffs charge Fitzpatrick with ignoring their complaints, which might, possibly, implicate M.J.'s right to procedural due process, their real concern is the content of Fitzpatrick's responses to their complaints, i.e., the way he handled them substantively, not the way he handled them procedurally.  The constitutional right to due process protects a person's right to be heard, but

17

does not guarantee a right to any particular outcome once he or she has been heard.  Because plaintiffs do not adequately allege a deprivation of a constitutionally protected property interest, Fitzpatrick is entitled to dismissal of the procedural due-process claim asserted against him.

### 2. The School District

Because plaintiffs have failed to state a substantive due-process claim against Fitzpatrick, the School District is also entitled to dismissal of plaintiffs' substantive due-process claim.  See Gianfrancesco, 712 F.3d at 640 n.9.

### D. Count VXII: Invasion of Privacy

In Count XVII, the Johnsons claim that "agents of the . . . school district disseminated private and confidential information about . . . M.J. to the School Board, or school board members, or others."  First Am. Compl. (doc. no. 38) ¶ 246.  While this claim appears to be based upon state tort law, see id. ¶ 245, the complaint also states that the "information [that was] disseminated may be protected under The Family Educational Rights and Privacy Act ('FERPA') 20 U.S.C. § 1232g," id. ¶ 247.  To the extent that plaintiffs are attempting to bring a claim under FERPA, that claim is necessarily dismissed because "FERPA does not confer a private right of action[.]"

Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 67 (1st Cir. 2002).

### E. Counts IV-XVII: State Causes of Action

Given the foregoing disposition of all the federal claims in this case, nothing remains but plaintiffs' supplemental state-law claims. "When federal claims are dismissed before trial, state claims are normally dismissed as well." McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 74 (1st Cir. 2003) (citing Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998)); see also Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)).  As the court can discern no reason for departing from the general rule stated above, Counts IV-XVI and the state claim asserted in Count XVII are all dismissed.

### Conclusion

For the reasons detailed above, Fitzpatrick and the School District are entitled to dismissal of all the federal claims asserted in Counts I-III and XVII, and the court declines to exercise supplemental jurisdiction over plaintiffs' state-law claims.  Therefore, the motion to dismiss filed by Fitzpatrick and the School District, document no. 28, is granted, and Primex[3]'s motions to dismiss, document nos. 44 and 52, are denied as moot.  Finally, as plaintiffs have had an ample opportunity

to amend their complaint, and significant guidance regarding how to do so, <u>see</u> Order (doc. no. 14) 5-9, their first amended complaint, document no. 38, is dismissed with prejudice. Accordingly, the clerk of the court shall close the case.

      SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 9, 2014

cc:   Andrew D. Dunn, Esq.
      Dona Feeney, Esq.
      Keith Mathews, Esq.
      John F. Skinner, III, Esq.
      Katherine E. Spillane, Esq.